*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

**ENTRY ORDER**

SUPREME COURT DOCKET NO. 2010-324

JANUARY TERM, 2011

| | |
|---|---|
| In re N.H., Juvenile } | APPEALED FROM: |
| } | |
| } | Superior Court, Addison Unit |
| } | Family Division |
| } | |
| } | DOCKET NO. 76-10-07 Anjv |
| | |
| | Trial Judge: Alden T. Bryan |

In the above-entitled cause, the Clerk will enter:

Father appeals from the court's order terminating his residual parental rights in daughter N.H. He argues that the court failed to find that severing his relationship with N.H. was in N.H.'s best interests. We affirm.

N.H. was born in January 2004. Mother had a serious drug problem and father had been involved in the criminal justice system for numerous crimes of violence, including domestic assault, stalking, and assault on a police officer. Father moved out of the marital home two months after N.H. was born, apparently after discovering mother smoking crack cocaine. N.H. lived with both parents during the first two years of her life. In February 2006, father was incarcerated for stalking a female partner. Mother was about to become homeless, and she sent N.H. and two of her other children to live with relatives. These individuals neglected and possibly abused the children. In October 2007, the children were taken into the custody of the Department for Children and Families (DCF) with the agreement of parents, and in January 2008, N.H. was determined to be a child in need of care or supervision. Father was released from prison in April 2008. In August 2009, DCF moved to terminate both parents' rights. Following a four-day hearing, which mother did not attend, the court issued its order terminating both parents' rights.

The court found in relevant part as follows. When N.H. came into DCF custody, she had emotional and behavioral problems and showed signs of past trauma. She had had almost no relationship with either parent for the previous two years. While the child was in custody, mother failed to complete any case plan requirements and exhibited no interest in being a parent. As noted above, father's tendency toward violence was a long-term issue, and it remained an ongoing difficulty. Father was easily frustrated and continually had problems with transportation providers, foster parents, and social workers at DCF. At the time of the final hearing, father was charged with assaulting a police officer, and he faced a potential prison term of two years.

The court recognized that father had made some progress in the year following his release from prison. He continued to struggle, however, in understanding and meeting N.H.'s mental

health and behavioral needs. Additionally, father would sometimes fall asleep during visits with N.H., and there were times that his personal issues with service providers interfered with his visitation. As of August 2009, father's progress had slowed. He was not in therapy, he had not been evaluated for a possible sleep disorder, he was not taking certain medications as he had been in the past, and his mental health status was not stable. Father was also unemployed and had lost his housing due to a fight with his roommate. Although father was able to find new housing by the time of the final hearing, he had made no progress in moving to a location closer to N.H., and he was facing possible eviction for inability to pay his share of the rent. In October 2009, father was picked up for shoplifting. The family court found that by the end of 2009, father had made insufficient progress in attaining the kind of stability to provide the structure, safety, support, and consistency necessary to provide a proper home in which to build a secure and trusting relationship with N.H.

In contrast, N.H. was doing well and living in a safe and appropriate foster home with skilled foster parents. She had a routine that was helping to create a consistent sense of safety. Her medical needs were being met, and she was in therapy. N.H. had also transitioned well to a new school and certain behavioral issues were subsiding.

Turning to the statutory best-interests factors set forth in 33 V.S.A. § 5114, the trial court found that father sincerely loved N.H., and it acknowledged that he had made serious efforts to improve his life. At the same time, however, N.H. desperately needed stability and permanence. She had lived the first four years of her life with significant neglect, serious attachment issues, and little if any stability or consistency. While father had established a relationship with N.H., he was not in a position to provide the child with the emotional, physical, medical, and educational support that she needed. Although father could play a constructive role in N.H.'s life from the standpoint of personal contact and affection, he was not equipped to take on a full single parent role in her life within a reasonable period of time. For these and other reasons, the court concluded that termination of father's rights was in N.H.'s best interests. This appeal followed.

Father asserts that the court erred by failing to find that permanent severance of parent-child contact was in N.H.'s best interests. In other words, he argues that the court must explicitly decide if the child's need for adoption outweighs the benefits of continued parent-child contact. According to father, it is not clear what weight the court gave to each statutory factor.

These arguments are without merit. To determine the best interests of a child, the court must consider four statutory factors. 33 V.S.A. § 5114. The most important factor is the likelihood that the natural parent will be able to resume his or her parental duties within a reasonable period of time. See In re B.M., 165 Vt. 331, 336 (1996). As long as the court applied the proper standard, we will not disturb its findings on appeal unless they are clearly erroneous; we will affirm its conclusions if they are supported by the findings. In re G.S., 153 Vt. 651, 652 (1990) (mem.).

The statute does not require the court to find that a child's need for adoption outweighs the benefits of continued parent-child contact. See 33 V.S.A. § 5114 (setting forth statutory factors); In re D.B., M.B., & N.B., No. 2009-010, 2009 WL 2413620, at *3 (Vt. May 29, 2009) (unpub. mem.) (rejecting same argument), available at: http://www.vermontjudiciary.org/d-

upeo/upeo.aspx; <u>In re T.M. & E.S.</u>, No. 2008-225, 2008 WL 4542741, at *3-4 (Vt. Oct. 2, 2008), (unpub. mem.) (same), available at: http://www.vermontjudiciary.org/d-upeo/upeo.aspx. Instead, it sets forth four factors, all of which the court considered. Father does not challenge the court's conclusion as to the most important factor that he cannot parent N.H. within a reasonable period of time. As to the remaining factors, the court recognized that father loved N.H. and that he could play a constructive role in her life through personal contact. Nonetheless, these factors were outweighed by father's inability to meet N.H.'s needs within a reasonable period of time as measured from the child's perspective. It is evident that the court weighed the relevant factors in reaching its conclusion. Its decision is amply supported by its findings, which are in turn supported by the record, and we find no error.

<u>Affirmed</u>.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
Denise R. Johnson, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice